You want to call the next case, please? Case number 090536, Illinois, with the Sheridan-Wilson-Hall and Concord Extended Care. I wonder if the lawyers who are going to orally argue would identify yourselves. Good morning, Your Honor. These are all representatives of the Illinois Insurance Guaranty Fund. Good morning. Edmund Harris on behalf of Concord-Wilson-Hall. Counsel, you'll each be allowed 15 minutes to address the court, and you can save out from your 15 any portion you wish for a response. I think you can safely assume we're familiar with your briefs. Thank you, Your Honor. I would like to reserve 15 minutes to respond. May it please the Court? The insured Concord put the fund in an impossible position. Why didn't you file a reservation of rights when you defended the case? Well, we didn't even know there was a problem with cooperation until the sanction order was entered. Wait a minute. Your lawyer stepped in on the case and what the complaint was filed on November 12, 2003. Right. We were The first letter of Mr. Weber, Mr. Weber was appointed by the Guarantee Fund. Yes. The first letter from him to Concord was on April 6th of 04. Correct. Then there went on for two years. Yes. Including somewhere on the show cause order on November 12, 2004. He didn't In all that time, nobody, I mean, all you had to do was to file your reservation of rights letter. Well, Legion was involved, wasn't it? For how long? Legion was in liquidation when the lawsuit was filed. You were in it at the beginning. Right, the lawsuit Pretty much from the beginning. Yes. Mr. Weber actually was appointed by the Guarantee Fund, was he not? Yes, he was. To handle the main, the main oar. Yes. Okay. Yes. But before we came in, because of the, because of Legion's disarray, I believe McVeigh and Parsky's, their personal counsel wrote to them and told them to gather all information. I know. I mean, you worked very hard at trying to get them to cooperate. But we weren't told of any problem with lack of cooperation. Mr. Weber never, never told us anything until there was a Well, wait a while. Mr. Weber is your lawyer. But there, this case You're going to lay it all on Mr. Weber now? No, this case illustrates the problems with the tripartite relationship. Yeah, well, that's what I was going to ask you. My next question is, do, are there special circumstances when the Guarantee Fund is involved as opposed to a regular insurer? Yes, but You're not under the same obligations with respect to filing a reservation of rights? I wouldn't say that, Your Honor. You serve the defense. I'm not saying that, Your Honor. I think even an insurance company that hires a defense lawyer, a defense lawyer's obligations are to the insured. And to the extent he's defending the insured from liability in the underlying action, the interests of the insured and the insurer are aligned. Supposing the jacket was on the lawyer. In other words, where the client said to the lawyer, here are my files, help yourself. And the lawyer decides to withhold certain documents because they expose the client to liability. Would you have standing at this point to argue that that's a lack of cooperation with the policy? I believe I would be hard pressed. That's a different situation than what we have here. I would be hard pressed to argue We're right in that area with Justice Kale's question, aren't we? I think we would be hard pressed to argue that the insured didn't produce the documents. If the insured produced everything until the attorney hired Well, the insured asked through his lawyer. That lawyer was appointed by the carrier. Who wears the jacket? The attorney appointed by the fund asked repeatedly for the documents. Right. You said it out. I mean, he spent two years urging them to comply. Right. But at some point, I mean, what is the problem with simply filing a notice of you're going to continue to defend with a reservation of right? The problem is that we weren't even told that he was having a problem getting the records. He didn't know until his consultant, I believe, in 06, in June. So the lawyer is under no obligation to protect the insurer? Well, of course he is. But does a lawyer – is a lawyer obligated to assume his client is lying to him? If the lawyer – actually, I think it's just the opposite. What evidentiary support do you have? For what? For the willful and contumacious lack of cooperation. What's your evidentiary support? Well, first of all, there is Judge Zwick's order. Well, not good, because that's what I wanted to say. Now, what efficacy whatsoever does Judge Zwick's order have to your action regarding your client? Is Judge Zwick a witness in this case? Is that an adjudication? That was an adjudication against the Concord. And the question is, to what extent is that adjudication against Concord of any evidentiary value to the carrier? Well, Judge Zwick made specific findings that Concord withheld records without justification. That's a litigation between Concord and the plaintiff, the underlying plaintiff. This is litigation between the carrier and its insurer, who happens to be the underlying defendant. But still, where is – what is the standing? I shouldn't use that word, because it has other connotations. But what is the status of a court's adjudication in the underlying tort claim, vis-a-vis the litigation between the carrier and the underlying – and its insurer, who is the underlying defendant? Well, are you suggesting that the insurer is not bound? Well, you tell me under the rules of evidence. Explain to me under the rules of evidence what dignity, so to speak, the disposition of the trial judge in the underlying tort action has vis-a-vis proof of your claim of lack of cooperation. I mean, all of the factors that the trial judge considers may still be out there, but don't they have to be independently introduced? Because isn't the adjudication in the underlying tort action simply hearsay? Well, we do have some independent verification that I'll get to. But I'm interested. I'm interested in knowing. You can impeach a party by past convictions. Okay. But in effect, past convictions are given special status in the rules of evidence because otherwise they're hearsay. Since they don't bind the parties in this litigation. Or are you claiming some sort of offensive race judicata kind of action here, where you can hold your insured to an adjudication resulting in a different litigation to your, to subserve your cause of action? In terms of the rules of evidence, Your Honor, judicial notice is a law of evidence. Judicial notice of what? Judicial notice of what? Entered in a related litigation. We don't doubt what Judge Wick did. We don't need judicial notice for it. And we certainly can take judicial notice. But Judge Wick did that. But is she available for cross-examination? I'm not naive. I taught evidence for 20 years. I'm not asking out of naivety. Believe me. I didn't tell you, Your Honor. No, no. I don't mean to intimidate you with that either because I may have been wrong for 20 years. You know? But tell me what the status is of this adjudication. The court can take judicial notice of the findings of fact made by Judge Wick. And those findings of fact were what bound it. Those findings of fact are hearsay. What is the evidentiary value of those findings in the context of the new litigation? Are you, well, but the court. He wants you to get to the question of whether or not it's race-judicial. Yeah. There might be some offensive race-judicial. I don't mean offensive that it's as a pejorative. But usually race-judicata is defensive. This may be an offensive use of race-judicata, but it has its parameters. Are you saying because this case, this order could have been appealed? No. They had full opportunity to litigate that issue in a lower court, and there was a judgment entered. The question is can you avail yourself of that judgment? So you thought he was being aggressive against you. Actually, this is much to your benefit. Not necessarily. I'm not saying it's to your benefit. This is preclusive. This is preclusive on the issue of cooperation. The prior judge has already found that they weren't cooperating. We don't have to do anything more than that. One way or another, otherwise, where does it belong? Well, the trial, this order. All it tells us is that there was a body of evidence presented that led to a certain result there. But right now, that's your set. You may avail yourself of that evidence, but you have to introduce it anew in this litigation. Well, the Judge Zwick's order has been introduced in this litigation. No, you can't introduce the order. You have to introduce the evidence that led to that order. But the order itself is of no significance. The court can take judicial notice of what happened below. Well, we're going round and round. I think there's some merit to that. May I ask you a question? Sure. What does the cooperation clause say? I don't see reference to it. Perhaps you can. I believe, I don't know if I brought that with me. I believe the insured is obligated to cooperate with the insurer in the defense of the action. And there's also a statutory duty to cooperate. What does the policy language say? I believe that's on page 19 of our brief. In the event of occurrence, offense, medical incident, claim, or suit, on page 20, you and any other involved insured must cooperate with us in the investigation, settlement, or defense of the claim or suit. All right. So it's actually between the insured and the insurer. It really doesn't suggest that you can somehow transplant this behavior in the underlying lawsuit to a breach, does it? How can you possibly divorce yourself from what's happening in the underlying lawsuit in terms of cooperation? Well, part of it is that the insured at least has to be aware that you're going to not indemnify based on their breach of this provision, which was never done until after the sanction order occurred. So, I mean, there's no ability for them to even be aware that they're breaching the clause. If they were advised, foliation might become a real problem. And if that is the case, then we're not going to indemnify you because of the breach. But they were never notified that they weren't cooperating with the insurance fund. We weren't even notified. We had no idea that there was any problem with cooperation until the sanction order, until this motion for sanctions was filed, and we were assured by counsel that this is unfounded. It was only when we saw the sanction order that was entered. And at that point, what's the point in seeking their cooperation? What's the point in not filing a notice of reservation of rights just to protect yourself? We immediately filed a declaratory. No, you didn't. Your declaratory was filed on May 8th of 2006. That was April, May, June. That was four months, three months after the sanction order was entered. It was, like, less than three months, yes. Is it your position that there has to be prejudice or there doesn't have to be prejudice when you breach the cooperation clause? There must be prejudice, yes. I think the law is pretty clear. Is there prejudice in this case? Would you not have put up your policy limits of $300,000 come hell or high water? Well, that is speculative. That requires going to – Okay. What is speculative is that you settled the case. Is that something that you could have gotten summary judgment for? On what, Your Honor? On the question of whether there was prejudice? You asked for summary judgment, didn't you? Both sides asked for summary judgment. Now, how could you have gotten – From the declaratory? We'll deal with your opponent's right to summary judgment. That may also not be proper summary judgment. We don't know that yet until we hear it. We tried to bring a motion for judgment on the pleadings. But how can there be a motion for judgment on the pleadings if the issue is still alive as to whether you would have paid your policy limits had those documents been produced and had not been any sanctions imposed by the court? How can you establish that by way of summary judgment, particularly when it's counterintuitive because it's such a low policy limit and so serious an injury? We were put between a rock and a hard place because we could not conduct the discovery in this case. We could not receive – Is that the prejudice? Or do you have to show the bottom-line prejudice in terms of your monetary loss? Is it the fact that you have extra burdens imposed that give you a right to walk away under the breach? And I'm asking. Or is it the bottom-line dollar amount? The fund never walked away. The fund at all times did everything it did. I don't mean to walk – The fund – I'm not picking a fight with the guarantee fund or with the propriety of the conduct. Every question that I'm addressing has a legal impact and my words should be taken in a legal context. By walking away, I mean have they a right to reject coverage for a breach of cooperation because their burden is increased, even though had their burden not been increased, they still would have had ultimately the same financial loss. That's my question. I understand what you're saying, but the fund attempted to litigate this matter and then out of concern for the insured stayed it and then again attempted to protect them while before it litigated the issues in this case. But the question that I'm asking is whether – let's assume that they willfully withheld evidence that the court required to produce that foreseeably resulted in a sanction and increased thereby the risk to the carrier. But having increased that risk, let's also assume that there is no question that – or there is a question as to whether the carrier ultimately would be required to put up its policy limits. That's my question to you. Does the breach of cooperation clause necessitate a showing of financial loss? I believe what the cooperation clause necessitates is a showing that it actually hampered us in our defense of the action. That is what the case law says. But supposing it was also – supposing it was a question whether the hampering that it did to your defense made any difference to the ultimate outcome? That requires a crystal ball to know. Good. Then no summary judgment based on a crystal ball, right? I'm really not sure what you're talking about. You can't use a crystal ball for summary judgment. And my question to you is whether you have to establish that you were bottom line damaged or whether evidence would have to be weighed to reach that determination. I believe there is case law where an insured is not – where the insurance company is not even told of a case until after a default. There is clearly prejudice because they couldn't defend. And I don't think we have to believe that there was $38.57 that were down because – Can you compare a default action to this situation, though? I mean, I don't know if that's a good analogy. I think this was a default on liability. Well, but there was a lawyer there representing the extended care, Concord, wasn't there? And Mr. Weber said that the – I mean, how do you get summary judgment when one attorney says that there was not a contumacious disregard for turning over documents? Some of the documents were involving a hospital, weren't they? I mean, they were asked to turn over hospital documents, not their own documents. Isn't that so? Right. But let's go into that. Well, I'm just saying that when you have this kind of dispute, hospital records, they're not Concord's, and the court is later finding them willfully violating orders that don't even relate to their own documents. They eventually tendered the documents. It did relate to that. They tendered half of the claim. Counsel had asked for all of these documents. First of all, McVeigh and Parski had told Pamela Lee, he sent her a letter saying, get all of these documents that are in various places. Yeah, and secure them. And she knew that they were kept in various places at the time. You look at her affidavit. There's nothing there to show that she actually looked for anything. She waited until, like, a year later. She told somebody to pull the chart. I grant you that. I grant you that. So when you have this attorney, Mr. Weber, who's representing Concord, saying that they weren't acting in a conscious disregard for court orders, how do you get summary judgment? That would require accepting the affidavit over the testimony of Mr. Weber, which the court can't do. But anyway, the court granted summary judgment in this case and basically found that there wasn't a breach of the cooperation clause, partly because the cases that you cite involve insureds who were required to submit examinations under oath as the policy required, right? Some of those cases. But is there any cases? All right. But are there any cases that actually talk about breaching a cooperation clause vis-à-vis the parties involved in an underlying suit? Well, yes. The employer's reinsurance case, I believe, was a defense case where the court found that a pattern of noncompliance with providing information over several months violated the duty to cooperate. But in that case, was there any kind of lack of notice to the insured that you're not cooperating with us? Like this case. I mean, you admit the declaratory judgment action was filed after or the suggestion of breach of cooperation was filed after the sanction order that Judge Wick entered. Yes, because we had no idea there was a failure to cooperate. Counsel had no idea. And when you talk about the hospital records, counsel's letter in July of 2004 sending the notice to produce to the insured told them items 12 to 15 need to be addressed. Items 13 is the one that they answered. No hospital records were found. But item 15 asked for the complete original chart of Herrera going on with a whole array of things. And their response, which is that RC 890 was for 15, her chart failed. All they did, and it's undisputed, all they did was give them the same 196 pages of the chart. They never bothered to look. And Illinois law does not require an outright refusal. It doesn't require an outright refusal in order for there to be willful non-cooperation. The employer's reinsurance case, there was a several-month period of failing to provide things. Was that a summary judgment case? I don't remember, Your Honor. I would have to look that up. I don't know how you get summary judgment when you have conflicting evidence either way, from the attorney actually representing the insured in the court in front of Judge Slick, and then, you know, the affidavit of the funds representative. I don't know. Well, I think the facts are pretty much agreed upon. The facts are the facts. It's just a question of what's the law here. Well, I don't know. The law is not, to my understanding, that you can transfer an order entered in the underlying action by the trial judge to equate with cooperation between the insured and the insurer, in this case, the fund. Incidentally, for the record, I don't agree with you when you say the facts are pretty much agreed upon. It's just the law. Among other things, a key factor is state of mind, and is that pretty much agreed upon? I mean, we need willfulness, as opposed to negligence, as opposed to ordinary procrastination, right? And that's why it always helps when you have an outright demand for the cooperation and the refusal, or a delay in the face of an outright demand, which there was not here. So how are we going to agree on those facts as to what triggered their failure to produce? Whether it was inadvertence, difficulty, neglect of an employee, or whether it was a contumacious refusal, as the trial court in the underlying action found it, that would be closer to willful, if it were that. But that, as far as I'm concerned, you have yet to prove the admissibility of that in the summary judgment. Well, I respectfully disagree that you have to prove willfulness, because I believe noncompliance, unexplained noncompliance or willfulness would satisfy the noncooperation. At some point, a pattern of noncompliance without reasonable explanation becomes willful. That's been recognized by other courts. Is that willful for purposes of summary judgment, or for purposes of establishing, of weighing the evidence? Are you weighing the evidence when you're doing that, or is it proper fodder for summary judgment, where you cannot weigh evidence? There has to be no dispute as to the underlying evidence. But, Your Honor, I don't believe we need to prove willfulness. If something is susceptible to opposing inferences, then it cannot be determined on summary judgment. It can't. So how do we make a summary judgment out of this, as far as you're concerned? And you'll be asking the same question as far as the plaintiff is concerned. Well, that's a whole other story. I believe the facts establish a pattern of noncompliance without justification that supports judge's findings. Without conflicting inferences, where the court doesn't have to weigh evidence to make its findings. In this case, in the declaratory? I find it very difficult, but who knows, to reach that conclusion. I think you have a situation where both parties... The law is pretty clear that both parties can be demanding summary judgment and nobody gets it, right? Because the court doesn't make its own determination. I think there was evidence in this case of a pattern of noncompliance. But if you have to weigh that evidence, then the summary judgment is not available. Then the parties deserve the right to go to a trier effect. So, I don't know, where do you make a summary judgment out of the fact that there has been... Is it the numerosity of the pages? The fact that they produced 196 when there were 595, having left out 400? It smells bad, but it doesn't necessarily... It's not necessarily conclusive as to whether that was noncooperation or difficulty of performance or some sort of degree of negligence. At some level, it was... Besides that, you know, it's counterintuitive, I suppose, to the extent that they had insurance. Why would they care about protect... Well, you know, that cuts both ways, I suppose, because their policy limits were light. So they might have had some motivation to withhold documents. Well, for future cases, if an insurance personal attorney evaluates a case, it's worth approximately $600. And if there is insurance of $1 million, perhaps if the insured plays their cards right, it'll all be covered. For a trier effect, no? That's a determination to be made by a trier effect? Not if they're... I don't see how you can... They're a request to admit. They have admitted all the documentary evidence. They have admitted the terms of Judge... That this is a true and correct copy of Judge Wick's order. They have admitted that these are the letters written by the insured's own attorneys begging for the documents. They've admitted the letters from our attorneys. Well, you could admit that it's Judge Wick's order, but you can still negate the correctness of that order since you're not bound by it, unless you can show that you're bound by it in this litigation. Nobody is going to deny whether Judge Wick said it or didn't say it. I would presume if they have any kind of able counsel currently, which I, at least as far as the briefs are concerned, they have in abundance. But the question is whether that determination by Judge Wick cuts any ice in this case. And what should an insurer in this situation do? Prove his case? But that can't be done unless we go through all the hoops. We're going around the address here right now. It's an impossible burden that you're placing on an insurance company and on the guarantee fund. I'm not doing it. We can't legislate the laws of evidence at this point. I believe there were requests to admit nailing down the facts and a pattern of noncompliance that went on for. He first asked for the chart. Let's hear from Concord and then we'll give you an opportunity to respond. Okay? Counsel? Is it McGinnis? Good morning, Mr. McGinnis. How are you? Ed McGinnis on behalf of Concord. May it please the Court. I've been listening, obviously, to what's been said. And I think where I would start, in light of what's been said and in light of what's been said as well, is that our first position is that there was cooperation. And I think that's a very good position. Well, again, you have to make that determination in the light of the summary judgment that you were granted. To what extent is this appropriate for a summary determination by the Court? And that's really what I'm listening for, and I imagine my colleagues even more so. I understand that, Your Honor. In connection with the summary judgment motion, we attached, obviously, information, comments, letters,  in which Mr. Weber never notified the fund that there was, in fact, any lack of cooperation. I think, indeed, there's some correspondence indicating that they were working. Simply the elicitation by Mr. Weber, produce all of your documents, doesn't satisfy that purpose? Well, I'm not sure I understand the question. Well, he did ask, there's no one disputes that he asked the client, in this case Concord, for all of the pertinent records. And Concord believed it had complied with the itemized, not only the request for all the records, but the itemized request in the various interrogatories and requests. But how do we know that without weighing evidence? Well, included in the motion is the affidavit of Linda Flaherty, who was, at the time, the risk manager that was handling the Concord account. The documents that are attached to the motion, part of her affidavit, lists some 10 or better communications back and forth between her and Mr. Weber. Some by Mr. Weber asking for information, some by Ms. Flaherty asking back for clarification of the request. Then other communications directed from Ms. Flaherty to locations that may have, or potentially might have, these records that are being sought. So that indicates certainly more than an effort, more than a minimal effort, or certainly no effort, which is what counsel is suggesting and what the fund is suggesting, that there was either no effort or a flat-out refusal to comply with the guarantee funds attorney's request. So I think the evidence is there establishing that there were efforts to comply. The burden on the guarantee fund would be to show that there was a lack of cooperation. There's been no showing. In fact, I think in the briefs and comments, the fund, including the deposition testimony of the fund's representative, Mr. Andreessen, the fund said that the sole basis of their denial or effort to denial of cooperation was the order which the court has addressed at length already. Well, I think you better cover yourself, though. He's got a very interesting argument. You can't be used aggressively against you that you're bound by, that the race judicata binds you nevertheless. Well, I think we've also, I'm sorry. No, I was going to say, I mean, you do make the argument, for example, when we get back to this question of reservation of rights and the requirement that it be filed at the earliest possible moment. Your argument is they never filed one. So obviously we were cooperating. Because if we weren't cooperating, they would have filed under the reservation of rights letter. Well, that is indeed part of the argument. So now they can't turn around later on and say they weren't cooperating at this late date. And so we do raise the issue with respect to a waiver, and basically they're looking in the rearview mirror trying to find a way out of having to approve it. Well, they have a real problem, it seems to me, when you look at the Wallace case, because there it's clear, and it's clear in Illinois law generally, that they have to file a reservation of rights at the earliest possible moment. And they didn't do that. And indeed. They never did here. Well, they never did. They filed a deck action, but that was after they'd settled the case. Correct. In fact, those are the dates I looked at. It doesn't matter when I looked at those dates, but I refreshed my recollection this morning of those dates for this very reason. Because they essentially waived. I think they were not advised by their counsel that there was a problem. There was no problem. And I keep going back to that, not to negate or diminish the arguments about their need to contact Concord. You don't raise in your brief that they waived this, do you? I don't know. I think we did in our answer. You do? I think we did in our answer, and I think I did. We raised the issue. We point out the dates that they, in a letter dated January 6th, they brought up the issue of spoilation of evidence. Well, you point out that the only thing they ever referred to in the letter was that there could be a problem if evidence is spoiled. Correct. There was no suggestion you're not cooperating, and if you don't cooperate, nothing like that. Apparently, Mr. Andreessen may have at some point thought about it, but he certainly never advised Concord about it. As far as under Judge Zwick's order didn't touch on the spoilation. No, it didn't. No, and the settlement didn't either. No, and that's been acknowledged by Mr. Andreessen in his deposition. When Judge Zwick entered her order and found that they had been refusing, she also basically gutted the defense. Did she not? Well, no. No, not at all, Your Honor. Not at all? Well, not at all. Come on now, Counsel. Whatever I can do with not at all, I'm going to put it over. Well, what did she say? Forgetting about the sanction and that you have, you know, been refusing to comply with orders of this court, she said, as a result, I'm not going to let you do what? Here's what the order says. Plaintiff's motion for sanction is granted. Defendant Concord's answer is stricken. Stricken. Plaintiff is required to present a prime official case on liability issues which are newer to this defendant, semicolon, no cross-examination as to plaintiff's liability. Witnesses are permitted by Concord. And then item D, plaintiff is required to present a case on all damage issues. Concord is permitted to cross-examine plaintiff's claims. But not on liability. So liability is gone. We couldn't address the standard of care. Liability is gone. But I think, Judge, this order is very clear that the issue of cross-examination. Well, that's not setting the case at all? Judge, I overstated my comment. All right. Well, I'm only saying that should the fund be allowed to at least pursue this notion that the behavior of failing to provide any of the information that was being asked and then resulting in this order that guts their defense, isn't that enough for a breach of the cooperation clause at least to have a trial? A breach of the cooperation clause, Your Honor, is part of the contact between the insured and the insurer. Yes. The fact that an order was entered, an adverse order that certainly didn't please anyone, is not ultimately consequential to whether there was cooperation or non-cooperation. Why not? Aren't there cases that say that after a certain amount of time and failure to tender can amount to a breach of that cooperation clause by the insured? That's because the insured has an obligation under its policy to provide information. Provide information. In what information is it? It's the information in the underlying suit. So aren't we talking about the underlying suit here? But the information was provided, Your Honor. I think there's a distinction between the judge's switch order and to the extent it is relevant. It was provided after a point which the court said you cannot contest liability basically because of your behavior. But the record that's been submitted in connection with the summary judgment motions indicate that there was cooperation. While the guarantee fund might suggest that there was a total, just not a refusal, that's the word I'm looking for, a refusal to respond to the defense counsel's request or a refusal to produce documents or a refusal to do anything at all that was requested of it, that is not factually what occurred in this case. Concord assisted defense counsel with answering two requests to admit, three sets of interrogatories, three or four document requests, cooperated and helped submit. Why did Judge Zwick ever enter this order? Well, Judge, I think that's ultimately a question that we don't have to address. I agree with you. What, for example, if they had filed a reservation of rights letter the week before Judge Zwick entered her order, where would you be right now? Well, I think we'd have the same arguments to a large extent. If they had filed a reservation of rights letter saying you're not cooperating and then the following weeks Judge Zwick entered this order, would you have a leg to stand on right now in arguing that they could not deny coverage? I think so, Your Honor. I think so. Not in summary judgment. But if they had filed it a week before. I think the insurer has an obligation as well. They have an obligation to let you know as early as possible. And if there is a problem, they should try to contact us and resolve that problem. And even so, I mean, when they file a reservation of rights letter, the only thing that does is to protect them against the future, which is why they're filed. That's why reservation of rights letters are filed. You've still got your robust defense as best as they can manage it. Well, what exactly happened at the point where they kicked in their policy limits? They made a deal with Concord, did they? What did they say? I mean, the briefs, to me at least, were somewhat vague about that. There was a communication between Concord's attorney, Timothy, and the guarantee fund about time to settle the case. The guarantee fund said we'll pay the $300,000, but we want to continue with the declaratory judgment act. So what's all the discussion in the briefs about the theory of recovery all about? If that was your deal, that you can still maintain the status quo as far as entitlement is concerned. Why are we arguing restitution theories, unjust enrichment theories? I kind of didn't latch on to that. Well, I understand what the court's asking, but I think at the time, because the declaratory judgment was pending, the fund wanted to not have a – I guess they had some fear that somehow we would argue that if we settled the case, we did. We have not made that argument, that we would not – somehow that would impact the – You're not challenging their right to recover if, in fact, they could establish that they were – that they had no coverage duties. We're not challenging that the status quo that existed at that time changed by the mere fact they could – Or that their mere advance of the policy limits prejudiced whatever rights they would otherwise have. We're not saying that. Okay. So all that stuff in the briefs as far as restitution, unjust enrichment, other theories of recovery, is kind of unnecessary, isn't it? Well, there were arguments raised by – I know, I know. The reason I ask is because McBaldwin is – one of the cases that I decided is cited in profusion in that, and I have some issue with how that case is used. Anything else you want to do in summing up? No, it's just – the final comment would be, again, I think the evidence is there that there was, indeed, responsive communications by the consulate in searching out a refusal to try to do what was being requested by defense counsel, and I think that's the perception defense counsel voiced over and over again, even to other young people. So I simply ask that the common court oppose the – Thank you, counsel. Ms. Zeger, a final word? Is it Zeger or Zeiger? Zeiger. Zeiger. I beg your pardon. Just briefly, Your Honor, I think it was too late for a reservation of rights letter. By the time we learned that there was a cooperation problem, it was through – Whose obligation is it to determine when the appropriate time is to send it? You say it was too late. It was too late. Sure it was too late because something – things had developed in a way that were very adverse to your position. The sanction order, yes. But that's the whole point of the insurer's duty is to let the insured know as soon as possible of these dangers. That's what protects you. Because the big question is in vernacular whether you view that as a liability, the sanction order, or as an opportunity. And your problem is not that you have to prove a lack of cooperation when you file your reservation of rights. You don't. You just have to assert it. And then you're protected so that if events develop in the future where a judge comes along and slams your client based on lack of discovery, willful, and condemnations, you're home free. You've already filed your reservation of rights. They've been sanctioned by the court. You walk away. But we had no clue of a failure to cooperate because defense counsel – When you send all of those letters saying – Defense counsel ran out his client to us. You had enough of a clue to maybe say we better protect ourselves because they're not sending the stuff. They may be acting in good faith from our perspective, but they may not be acting in good faith from the perspective of the judge. And certainly the other side in this case is jumping up and down and taking off their clothes and filing all kinds of motions for sanctions. So just to protect myself, I think I'm going to file a reservation of rights letter saying you're not cooperating. We weren't told about it until after the sanctions motion were filed. We were told by defense counsel. Well, then you're laying it on the lawyer again. You're putting the suit on him. Well, but he's protecting his client. He's your agent. He's protecting the insured. He has a dual obligation, admittedly. But the reservation of rights letter doesn't do anything to impeach or destroy anybody's position until later events develop. If retained defense counsel stumbles over a coverage defense, is he obligated to tell the insurer? Is he obligated to do what? Is he obligated to tell the insurer if he stumbles over a coverage defense? Well, you're asking me a hypothetical that isn't present here. I think maybe it is. I think maybe it is because his duties are to the insured. He's the insured's attorney. And our interests are aligned only with respect to fighting the underlying. Well, I think that would be the case if there was an initial conflict of interest, for sure, and you had independent counsel chosen by the client. But I can't tell you that as of the moment, that if it's counsel appointed by the carrier, that there may at least be some residual obligation to the carrier to the extent that it at least doesn't conflict with the client's interests. I don't believe he would. Anything else? Yes, there are cases from other jurisdictions. The Levy v. Chubb case, which we cited, in that case it was almost a year. On what issue? Pardon me? That was a New York case. On what issue? On a pattern of noncompliance. Wasn't that an examination under oath that was not given? Yes, but there are all kinds of cases talking about cooperation clause, even if you're dealing with an examination under oath, giving partial answers and partial documentation doesn't quite cut it. Are they summary judgment cases? Are they summary judgment cases? Those policies require examinations under oath, though. Yes. I mean, those cases that you cited are certainly distinguishable, because there's a policy provision that requires an examination under oath of the insured, and when they refuse or answer falsely or don't answer, I mean, that's different than this case where discovery was being sought and a judge subsequently entered the sanction order. I mean, I don't know that you can compare those. Levy v. Chubb apparently was a summary judgment case, and they talked about they gave them some of the necessary information but omitted this and that, and willful noncooperation has been found to exist, but there's a pattern of noncompliance for which no reasonable excuse can be offered. I know there are other cases from other jurisdictions along the same line. Counsel, thank you. Thank you, Your Honor. Thank you both, counsel. The case was well briefed and well argued. It will be taken under advisement. I have a comment. Sure, sure. I was asked about raising that as a defense to the waiver. I think it's in the answer. I haven't looked at that answer for a while. The answer to the complaint? Yeah. Oh, I'm sorry. I was talking about the brief. But we have the answer. I just want to make sure that we're not trying to make any misrepresentations. Yes. Thank you both.